UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| ANDY BESHEAR, Attorney General, ) *ex rel.* COMMONWEALTH OF ) KENTUCKY, ) ) Plaintiff, ) ) V. ) ) VOLKSWAGEN GROUP OF ) AMERICA, INC. d/b/a VOLKSWAGEN ) OF AMERICA, INC.;VOLKSWAGEN ) AKTIENGESELLSCHAFT d/b/a/ ) VOLKSWAGEN AG d/b/a ) VOLKSWAGEN GROUP; ) AUDI OF AMERICA, LLC; AUDI ) AKTIENGESELLSCHAFT, d/b/a AUDI ) AG; PORCHE CARS NORTH ) AMERICA, INC.; and DR. ING.H.C.F ) PORSCHE AG, ) ) Defendants. ) | Civil No: 16-cv-27-GFVT **OPINION & ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' Motion to Stay further proceedings pending a ruling by the Judicial Panel on Multidistrict Litigation (JPML) concerning the transfer of this action to a consolidated Multidistrict Litigation (MDL) case, *In re: Volkswagen Clean Diesel Mktg., Sales Practices, and Prod. Liab. Litig.*, MDL No. 2672. [R. 9.] For the reasons explained below, the motion to stay will be GRANTED.

**I**

This case is related to hundreds of other suits that have been filed in recent months arising out of allegations that Defendants installed illegal "defeat devices" in certain automobiles

to avoid detection and enforcement of EPA emissions regulations and then sold these automobiles as purportedly "clean diesel" vehicles despite a lack of compliance with applicable federal emission standards.  On December 8, 2015, the JPML determined that a large number of cases related to these allegations should be centralized for pretrial proceedings, and that transfer of such cases to the U.S. District Court for the Northern District of California (the MDL Court) was warranted.  *Id.*  Since that time, over 650 cases have been conditionally transferred to the MDL Court.  [R. 9-1 at 2.]

The instant case originally was filed by Plaintiff, the Commonwealth of Kentucky through its Attorney General (the Commonwealth), in Franklin County Circuit Court, Franklin County, Kentucky.  Defendants subsequently removed the case to federal court on the basis of federal question jurisdiction.  [R. 1.]  Defendants also moved to stay further proceedings pending an imminent determination by the JPML of whether this case should be consolidated with the other related cases and transferred to the MDL Court.  [R. 9.]  The same day, the Commonwealth timely filed a motion to remand the case to state court for lack of subject matter jurisdiction, arguing that the claims at issue arise only under Kentucky law.  [R. 10.]  Two days later, on April 14, 2015, the JPML issued a Conditional Transfer Order (CTO) indicating its decision that this case should be transferred to the MDL Court.  [R. 15 at 1-2.]  The Commonwealth filed a Notice of Opposition and then moved to vacate the CTO pursuant to J.P.M.L. Rule 7.1.  The Commonwealth also requested that this Court expedite its ruling on the motion to remand before ruling on the motion to stay.  [R. 12.]  Accordingly, this Court held a hearing, during which the Court denied the motion to expedite and took the remaining motions under advisement.  [R. 18.]  Those motions have now been fully briefed, the Court has considered the arguments of both parties, and this Opinion is the result.

**II**

Congress has authorized the transfer of "civil actions involving one or more common questions of fact [that] are pending in different districts" to a designated MDL court in "any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). The JPML is authorized to order such transfers only after it determines that transfer of the case "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such action." *Id*. This authorization to transfer is given "with the expectation that transfers will be ordered only where significant economy and efficiency in judicial administration may be obtained." *Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1046 (E.D. Wis. 2001) (quoting H.R.Rep. No. 90-1130 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1900)). Once the JPML issues a CTO, any party opposing transfer can file notice of its opposition, and then within fourteen (14) days "shall file" a motion to vacate with a supporting brief, after which the JPML will hold a hearing on the matter.[1] "A pending JPML transfer motion or conditional transfer order does not affect the jurisdiction of the transferor court or its ability to rule upon any pending motions." *Meyers*, 143 F.Supp.2d at 1046; J.P.M.L. Rule 2.1(d).

Here, Defendants wish to stay all proceedings, including the remand motion, until the JPML finally resolves the transfer issue, while the Commonwealth argues that this Court should rule on its motion to remand before the JPML concludes that process. The decision whether to grant a stay is discretionary because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936) (Cardozo, J.); *see also Tolley v. Monsanto Co.,* 591 F.Supp.2d 837, 844 (S.D. W.Va.

---

[1] Thus, it is important to note that given the procedural posture of the instant case, the JPML has already determined that transferring this case to the MDL court will promote the interests of convenience, justice, and efficiency.

3

2008); *Meyers*, 143 F.Supp.2d at 1047 (quoting *Landis*, 299 U.S. at 254, as support for the district court's power to stay a case pending transfer by the JPML). Indeed, 28 U.S.C. § 1407 specifically authorizes the JPML to transfer cases even when there is a motion to remand pending in the district court, although the JPML's consideration of transfer does not deprive the district court of its own inherent authority to rule on the remand motion itself. Therefore, this Court has the power to resolve the instant motions despite the ongoing JPML process. The issue here is whether to exercise the Court's discretion to issue a temporary stay or to immediately remand the case to state court.

In making this determination, the Court notes that some courts choose to rule on pending motions to remand before the JPML decides to transfer the case, while many other courts decide to issue a stay pending the JPML's decision even when a motion to remand is also pending. *Compare, e.g.*, *Kantner v. Merck & Co.*, 2005 WL 277688 (S.D. Ind. Jan. 26, 2005) (ruling on remand motion before any potential transfer by JPML); *with Benge v. Eli Lilly & Co.*, 553 F.Supp.2d 1049 (N.D. Ind. 2008) (staying all proceedings pending final resolution by JPML concerning transfer); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F.Supp.2d 37, 43 (D.D.C. 1999) (same); *Rivers v. The Walt Disney Co.*, 980 F.Supp. 1358 (C.D. Cal. 1997) (same). The Court also notes that many cases related to the litigation at hand have also issued stays while others have chosen to remand the case before the question of transfer is fully resolved. [*See* R. 9-1 at 4 (listing multiple cases related to the instant litigation where stays were issued pending a JPML ruling); R. 20 at 9 (listing several cases related to the instant litigation where district courts remanded actions during pendency of CTOs).] Invariably, however, courts consider the interests of judicial economy and potential prejudice or hardship to the parties – an

inquiry which is necessarily specific to the individual facts and procedural posture of each case, and which is likely the cause for the apparent divergence of approaches.

In considering the instant case, the Court finds persuasive the extensive and thoughtful explanation for the approach adopted in *Meyers v. Bayer AG*, in which the district court makes a preliminary assessment of jurisdiction, and if, upon such assessment, jurisdiction is clearly improper, "the court should promptly complete its consideration and remand the case to state court." 143 F.Supp.2d at 1049.[2]  Although not binding, this reasoned approach also seems consistent with guidance concerning the MDL process in general, which provides that a primary reason for denying a stay pending the panel's decision on transfer is when federal jurisdiction is clearly absent. *Manual for Complex Litigation (Fourth)* § 22.35.  Thus, the Court first will assess the clarity of federal jurisdiction and resolve the motion to stay accordingly.[3]  [*See e.g.,* R. 21-1 at 4 (*LaFoy v. Volkswagen Grp. of America, Inc.*, et. al., 4:16-CV-466 (E.D. Mo., May 11, 2016) (also applying the approach set forth in *Meyers*).]

Accordingly, in light of the JPML's pending decision concerning the previously issued CTO, the appropriate inquiry here is not necessarily the eventual possibility that this case *could*

---

[2] Other district courts around the country have also found persuasive the approach outlined in *Meyers v. Bayer AG*, albeit with slight adaptations to fit individual cases, because of the comprehensive explanation the *Meyers* court gave for the rationale behind it and the flexibility it provides.  *See, e.g.*, *Betts v. Eli Lilly and Co.*, 435 F.Supp.2d 1180, 1182-87 (S.D. Ala. 2006) (giving extensive and thorough analysis of why the *Meyers* approach should be adopted in addressing simultaneous motions to stay and motions to remand in the context of MDL litigation); *Bd. of Trustees of Teachers' Retirement Sys. of Illinois v. Worldcom, Inc.*, 244 F.Supp.2d 900, 902-06 (N.D. Ill. 2002) (relying on *Meyers* as providing "[t]he fullest discussion of the methodological issues raised by simultaneous remand and stay motions in the MDL context" and then applying its three-step approach with some adaptation).

[3] In doing so, the Court acknowledges that two cases from district courts in Kentucky have not followed this approach, but they are distinguishable.  In *Anderson v. Merck & Company*, *Inc.*, the remand issue involved the question of fraudulent joinder which the court resolved first because it was clear, and the court was able to promote judicial economy by denying the motion to remand and granting the stay pending transfer to the JPML.  417 F. Supp.2d 842 (E.D. Ky. 2006).  As for the other case, *Farkas v. Bridgestone/Firestone, Inc.*, 113 F.Supp.2d 1107 (W.D. Ky. 2000), the Sixth Circuit has not explicitly adopted the view expressed there, while several other district courts have specifically declined to follow its approach.  *See, e.g., Worldcom, Inc.*, 244 F.Supp.2d 900, 902 (N.D. Ill. 2002); *Meyers*, 143 F.Supp.2d at 1047.

be remanded to state court, but rather whether there is any reasonable possibility that federal jurisdiction exists – or, as stated above, whether federal jurisdiction is *clearly* absent. *Manual for Complex Litigation (Fourth)* § 22.35; *see also Meyers*, 143 F.Supp.2d at 1047-52. This preliminary assessment of jurisdiction is critical because, after all, the jurisdictional question is about the Court's very power to decide the case. If federal jurisdiction is clearly absent, then the court should complete its consideration and remand the case to state court. *Meyers*, F.Supp.2d at 1049. If, however, "the jurisdictional issue appears factually or legally difficult," the court should "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id*. If so, the court should proceed to the third step of weighing the relevant factors to be considered in determining whether to grant the motion to stay. *Id*.; *see also Bd. of Trustees of Teachers' Retirement Sys. of Illinois v. Worldcom, Inc.*, 244 F.Supp.2d 900, 902-06 (N.D. Ill. 2002).

**A**

In making a preliminary assessment of jurisdiction, the Court disagrees with the Commonwealth that remand to state court is so clearly inevitable the Court should immediately remand the case despite the JPML's ongoing, simultaneous consideration of the Commonwealth's arguments. Defendants allege removal is proper under 28 U.S.C. § 1331 because the Commonwealth's state law claims for relief are based upon alleged violations of federal emissions standards, and liability therefore turns on the meaning of terms in the Clean Air Act (CAA) and on actions taken in an arena where Congress has clearly expressed its interest in regulating. [R. 1 at 7-11.] The Commonwealth, however, contends that its claims are based entirely on Kentucky tort law and the Kentucky Consumer Protection Act, and that interpretation

6

of federal statutes is unnecessary to their resolution. [R. 10-1 at 2-6.] As will be explained below, this jurisdictional question is not necessarily an easy one to resolve.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013) (internal citation and quotation marks omitted). Federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, while an action clearly "arises under" federal law where federal law "creates the cause of action asserted," federal jurisdiction can also exist in a "small category" of cases "even where a claim finds its origins in state rather than federal law." *Gunn*, 133 S.Ct. 1064 (citation omitted). For this second category of cases, federal jurisdiction can arise over state law claims "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id*. at 1065 (further explaining the standard set forth in *Grable & Sons Metal Prods, Inc. v. Darue Engineering & Mfg*., 545 U.S. 308, 314 (2008)); *see also Mikulski v. Centerior Energy Corp*., 501 F.3d 555, 570 (6th Cir. 2007) (citing *Grable & Sons*, 545 U.S. at 314).[4]

Here, the Commonwealth insists that no federal issues are implicated because its complaint does not specifically reference the CAA. [R. 10-1 at 3; R. 20 at 7-8.] The Court finds persuasive, however, at least at this juncture, Defendants' argument that the *right to relief* sought by the Commonwealth raises issues of federal law. [*See* R. 19 at 9-13.] The Commonwealth's complaint repeatedly contends that Defendants sold vehicles exceeding emission standards in breach of their warranties regarding compliance with federal standards. [R. 1-1, ¶¶ 2, 40, 102-

---

[4] The Supreme Court has interpreted the phrase "arising under" in § 1331 and § 1338(a) to have the identical meaning such that the Court's precedents for each may be used interchangeably, despite the specific application of § 1338 to patent law. *Gunn*, 133 S.Ct. at 1064 (citing *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 808-09 (1988)).

7

09, 121, 131, 145, 158, 164.] Even the Commonwealth concedes that its claims are premised on allegations that Defendants' purportedly "clean diesel" vehicles actually emitted levels of nitrogen oxides (NOx) by a factor of up to forty (40) times the allowable emission limits. [R. 10-1 at 2, 11; R. 20 at 5.] The "allowable emission limits," however, are exclusively set by the CAA, and are monitored and enforced by the EPA. 42 U.S.C. §§ 7521, 7522, 7541.

Moreover, the CAA expressly prohibits states from "attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles. . . ." 42 U.S.C. § 7543(a). Any such attempt by states or private parties to seek damages or other remedies based on alleged violations of the CAA is strictly prohibited in light of the broad sweep of the CAA, and thus state common law tort claims premised on the failure to meet CAA standards are preempted. *Id.; see also Jackson v. General Motors Corp*., 770 F.Supp.2d 570, 574-79 (finding the CAA's expansive intent preempts tort claims brought under state common law having any connection with or reference to the control of emissions from motor vehicles) (citations omitted). Thus, because the CAA prohibits states from setting or enforcing any emissions standards related to new motor vehicles and charges the EPA with the sole authority of enforcing such standards, state law cannot be used as the sole basis for determining whether emissions levels are impermissible. 42 U.S.C. §§ 7521, 7522, 7541; *see generally* 40 C.F.R. pt. 86. Establishing the recovery sought in the complaint based on the installation of "defeat devices" therefore appears to raise several federal issues and definitions in light of the expansive scope of the CAA.

Second, the Commonwealth contends that because Defendants have admitted to violating certain federal emissions standards, no federal issue is in dispute. [R. 10-1 at 11-12; R. 20 at 6.] This argument, however, is weakened by the fact that the same alleged factual scenario has given rise to such extensive litigation all across the country. Given the instant litigation, at the very

least the appropriate remedies for such actions are in dispute.  *See Grable*, 545 U.S. at 315 (noting that litigation involves a disputed federal issue where the meaning or application of federal law is contested).

Third, in determining whether the federal issues raised are "substantial," the court looks "to the importance of the issue to the federal system as a whole."  *Gunn*, 133 S.Ct. at 1066.  Situations involving "a nearly pure issue of law" that would have precedential effect on numerous cases are more likely to be considered "substantial."  *Grable*, 545 U.S. at 314; *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1173-74 (10th Cir. 2012) (finding a substantial federal issue where resolution of the issue "would apply to a fair number of disputes" based on similar factual situations that have "generated a not insignificant number of federal cases," where an action "concerns the responsibilities that a private defendant owes to a federal agency," and where the issue is one that "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." )  A federal issue can also be deemed substantial where "resolution of the dispute requires the interpretation and application of the [federal law] to the contractual arrangement between the parties."  *Ormet Corp. v. Ohio Power Co*., 98 F.3d 799, 807 (4th Cir. 1996).  Part of this inquiry should consider whether the issue is one that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues," despite involving state law claims.  *Grable*, 545 U.S. at 312.

Here, the enforcement of emission standards is clearly of great importance to the federal system, particularly in light of Congressional intent to preempt state emissions standards for automobiles and to grant the EPA exclusive authority to prevent, restrain, and punish CAA violations in the federal district courts.  *See Jackson*, 770 F.Supp.2d at 573; 42 U.S.C. §§ 7543, 7522, 7523(a).  Because of the extremely large number of cases arising out of Defendants'

9

alleged violations of emissions standards, any resolution of this case is likely to have precedential effect on a number of other cases as well.  At this point, given the allegations of Defendants' deception, it appears that at least some claims will involve the application of federal emissions standards to its relationship with Defendants, and the expansive language of the CAA indicates a federal interest in litigating such matters in a federal forum.  In light of that interest, there is an apparent need for uniformity in the over 650 cases around the country arising out of Defendants' alleged violations of those standards.  In short, if Defendants had not allegedly violated the CAA, the Commonwealth would not be able to bring this case.  Thus, because the Commonwealth's right to relief is predicated upon violations of CAA standards, which states are prohibited states from enforcing, the issue of appropriate remedies is substantial.  On the other hand, however, the Commonwealth contends that because Defendants have already admitted to violating federal emission standards, the application of federal law is unnecessary in this context.  Additionally, it is unclear at this juncture how much the claims in this case may depend more on allegations of fraud rather than on violating federal standards, and the Court therefore acknowledges that both parties can make reasonable arguments concerning this point.

  Fourth, Congress' clear concern of avoiding different and conflicting administration of emissions standards for motor vehicles indicates that exercising federal jurisdiction here would likely not disturb any Congressionally-approved federal-state balance.  This is particularly true in light of the CAA mandate requiring citizen suits to be brought in federal district courts, which at the very least shows the federal government has a strong interest in litigating disputes arising out of CAA violations in a federal forum.  42 U.S.C. § 7604.  The Commonwealth makes a persuasive argument that because the instant case is brought by the state's attorney general rather than a private citizen, this mandate is inapplicable and the interest in the state's ability to enforce

its own laws should weigh in favor of remand.  However, given the federal interest in uniformity when addressing CAA violations, it is unclear whether federal jurisdiction is *clearly absent*.  As explained above, the Court need not definitively resolve all jurisdictional questions at this juncture, but should make a preliminary assessment to see if the issue of jurisdiction is clear.  Because there are reasonable arguments on either side of this question, jurisdiction in this case "is not an easy call."  *See Meyers*, 143 F.Supp.2d at 1053.  Particularly because Defendants can make reasonable arguments that there is a substantial and disputed federal issue, and because a ruling on jurisdiction here could be applied to other related cases, the jurisdictional issue is not clear.  [*See* R. 21-1 at 9 (*LaFoy v. Volkswagen Grp. of Am, et.al.*).]

Finally, perhaps the most persuasive argument in favor of federal jurisdiction is Congress' clearly expressed intent to preempt the area of emissions standards for motor vehicles.  As noted above, the claims under the Kentucky Consumer Protection Act appear to be an attempt to impose a consequence on Defendants, or at least seek a remedy for, behavior that violated federal standards, and therefore there is a predicate question of whether the Commonwealth is seeking to enforce federal standards that are exclusively within the authority of the EPA.  As for the common law claims, the language of the CAA expressly preempts state common law tort actions "relating to" the control of emissions.  42 U.S.C. § 7543; *Jackson*, 770 F.Supp. 2d at 576.  "Prior case law clearly indicates that the phrase 'relating to' evinces an 'expansive' intent." *Jackson*, 770 F.Supp.2d at 576 (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992) and other cases).  Although the Commonwealth maintains that its claims for relief depend only on state law, the remedies sought are still predicated on actions that violated federal law, which makes it appear similar to a type of enforcement action, and at the very least makes it unclear that federal jurisdiction would necessarily be absent.  *See Kinnaird v. Medtronic, Inc.*,

2014 WL 4215592, *5 (W.D. Ky. Aug. 25, 2014) (finding "state law claims can be said to arise under federal law and thus permit the removal of the action to federal court where the vindication of a right under state law necessarily turn[s] on some construction of federal law") (quoting *Mikulski,* 501 F.3d at 560) (internal quotation marks omitted) (alteration in original).

Other courts also have recognized the importance of federal jurisdiction in the area of automobile emissions and defeat devices, finding that the CAA "unambiguously and expressly preempts state common law tort actions, provided that they 'relate to' the control of emissions." *Jackson*, 770 F.Supp.2d at 576 (finding that state "enforcement actions that have any connection with or reference to the control of emissions from motor vehicles are preempted by [the CAA]"); *see also In re Office of Attorney General of State of New York*, 709 N.Y.S.2d 1 (1st Dep't 2000) (finding that state attorney general could not use state common law to pursue claims related to defendants' use of devices designed to circumvent CAA standards because if similar state claims were allowed to proceed in the other 49 states "the chaotic situation which Congress sought to avoid would become an overnight reality.  In sum, States cannot be allowed to do indirectly what they cannot do directly . . . ."); *Gutierrez v. Mobil Oil Corp*., 798 F.Supp. 1280, 1284 n. 6 (W.D. Tex. 1992) (noting that Congress has made clear its intent to expressly preempt from state regulation moving sources such as automobiles).  Therefore the jurisdictional question is not clear.  *See Worldcom*, 244 F.Supp.2d at 903-05 (noting that "[w]hen the merits of a remand motion are easy . . . a stay would merely postpone the inevitable," but when a remand motion "raises thorny questions of law" and when similar complex issues have been or are likely to be raised in other related MDL proceedings, "[j]udicial economy favors a stay").

**B**

The next step under the *Meyers* approach is to determine whether this "difficult" jurisdictional question is common to other related cases that may be transferred. *Worldcom*, 244 F.Supp.2d at 905. At the very least, the question of appropriate remedies for violations of the CAA is a "common question of fact[]" in hundreds of other cases that have already been transferred to the MDL court. 28 U.S.C. § 1407(a). As mentioned above, however, the present case is not brought by a private party and involves an alleged violation of the Kentucky Consumer Protection Act, which are aspects that may make it somewhat more unique. However, the Complaint still predicates these claims on Defendants' action of selling cars in violation of emissions standards (necessarily federal standards), which is at least *factually* similar to the other cases. Moreover, at least two other cases so far have been brought by a state's attorney general, and, presumably, other such cases could potentially be brought in every state where Defendants sold the vehicles at issue. [*See, e.g*., R. 15-1.] The possibility of imposing different state law remedies for the same behavior emphasizes the need for consistency in this matter, which is yet another reason the MDL court is in the better position to decide these issues. *See Worldcom*, 244 F.Supp.2d at 905.

**C**

Finally, because "the jurisdictional analysis is both difficult and common," the Court next considers the propriety of a stay. *Meyers*, 143 F.Supp.2d at 1053. In determining whether to issue a stay pending a final ruling by the JPML, the Court should consider "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Id*. (citing *Rivers*, 980 F.Supp. at 1360).

"Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." *Rivers*, 980 F.Supp. at 1360.

Here, the sheer number of related cases, many of which also involve issues of appropriate remedies for Defendants' alleged actions, weighs in favor of a stay in the interests of judicial economy. *See Meyers*, 143 F.Supp.2d at 1053. A stay pending the JPML's decision can increase efficiency and consistency particularly "when the pending motions raise issues likely to be raised in other cases as well." *Manual for Complex Litigation (Fourth)* § 22.35. "[J]udicial economy is served by a stay pending transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL transferee court." *Fox v. DePuy Orthopaedics, Inc.*, 2011 WL 6057509, *1 (W.D. Ky. Dec. 6, 2011) (quoting *Ayers v. ConAgra Foods, Inc.*, 2009 WL 982472, *1 (S.D. Tex. April 9, 2009)); *see also In re Ivy*, 901 F.2d 7, 8-10 (2d Cir. 1990) ("Once transferred, the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course."); *Meyers*, 143 F.Supp.2d at 1053 (finding that "judicial economy clearly favors a stay" when the "other cases present the same or a similar issue"). Other related cases based on state law tort claims connected to Defendants' actions will likely have similar jurisdictional issues, and such complex issues are better resolved by one court.[5] *See Worldcom*, 244 F.Supp.2d at 905. The similarity between this case and others is underscored by the fact that the JPML's recognition of the existence of common questions of fact, *see* 28 U.S.C. § 1407(a), and by its transfer of at least one other case brought by a state attorney general.[6]

---

[5] This is true despite the suit being brought by a state attorney general because not only have other "tag-along" cases been brought by state attorneys general, but also there is a potential for more such cases to materialize over time.

[6] One such case, brought by New Mexico's attorney general, was stayed pending transfer to the JPML. [R. 15-3 (*State of New Mexico, ex rel Hector H. Balderas v. Volkswagen Grp. of Am., et al.*, 1:16-cv-147 (D.N.M.Apr. 27, 2016.] The Court acknowledges the Commonwealth's supplemental filing alerting it to another case brought by New Jersey's attorney general, *Lougy v. Volkswagen Grp. of Am., et al.*, in which the New Jersey District Court

Additionally, the procedural posture of this case weighs in favor of granting a stay because the JPML has already issued a CTO in this case, which is currently being challenged. Thus, the parties presumably are making similar arguments before the JPML already, and those arguments are currently being considered by a body possessing the advantage of familiarity with the facts and legal issues of hundreds of other related cases. To deny the stay and definitively rule on the remand motion at this juncture would needlessly duplicate and waste judicial resources. Many courts recognize the interests of judicial economy in issuing a stay are enhanced when a motion for transfer is pending before the JPML. *See, e.g., Worldcom,* 244 F.Supp.2d at 905; *Fox v. DePuy Orthopaedics, Inc.*, 2011 WL 6057509, at *2; *Jackson v. Merck & Co.*, 2006 U.S. Dist. LEXIS 9635, *3 (W.D. Tenn. Feb. 19, 2006).[7]

As for prejudice, neither party has shown that granting or denying a stay will cause significant hardship to either of them. Despite the Commonwealth's contentions to the contrary [R. 11 at 7], a temporary stay will not deprive the Commonwealth of its ability to seek a remand. The JPML has recognized that remand motions can be decided post-transfer and can be resolved by the transferee judge. *In re: Bayer Corp. Combination Aspirin Prods. Mktg & Sales Practices Litig.*, 609 F.Supp.2d 1379-80 (J.P.M.L. 2009) (finding plaintiffs can still "present their motion to remand to state court to the transferee court" and thus are not deprived of that right by a transfer to the MDL court); *In Re: Prudential Ins. Co. of Am. Sales Practices Litig.*, 170

---

denied a motion to stay pending the JPML's determination on transfer and remanded the case to state court. [R. 23.] The Court has considered that opinion, but finds that case distinguishable in that the claims at issue were somewhat different and apparently involved the New Jersey Air Pollution Control Act, while Kentucky does not have its own emissions regulation standard and instead apples the CAA. Additionally, the New Jersey case is not binding authority, and the very fact that one case brought by an attorney general in New Mexico was stayed while another in New Jersey was remanded further increases this Court's concern with avoiding the possibility of conflicting rulings in this situation.

[7] Presumably, this interest is even greater in a situation such as this where the JPML is in the final stages of ruling on a motion to vacate the CTO.

F.Supp.2d 1346, 1347 (J.P.M.L. 2001) (the same).  Thus, not only is the Commonwealth able to present its jurisdictional arguments before the JPML in the context of challenging the CTO, but it can also make the same arguments before the MDL Court if the case is ultimately transferred.  The MDL Court also will have the benefit of complete familiarity with the facts alleged within the broader context of other cases, and therefore its resolution of the pending remand motion will prevent the risk of inconsistent rulings.  *Manual for Complex Litigation (Fourth)* § 22.35.  Additionally, the parties presumably could re-file almost the same briefs with the MDL Court concerning the jurisdictional issues and would not have to engage in significantly more time or expense in doing so.[8]

Moreover, given the advanced stage of the challenge to the CTO, any stay issued will likely be of very short duration, and no significant delay will result.  The designated MDL court has already set in place a process and timeline for addressing remand motions in an efficient and timely manner and is prepared and equipped to resolve such motions.  [*See* R. 15-2 (MDL No. 2672, Pretrial Order No. 17).]  When "there will be no extended delay in the commencement of discovery" from issuing a stay that is only in effect until the JPML issues a final decision on transfer, there is no substantial prejudice to the plaintiff.  *Am. Seafood, Inc. v. Magnolia Processing, Inc.*, 1992 U.S. Dist. LEXIS 7374, *5 (E.D. Pa. May 7, 1992); *see also Bledsoe v. Pharm.*, 2006 U.S. Dist. LEXIS 5524, *4 (E.D. Mo. Feb. 13, 2006).

As for Defendants, if a stay is not issued and they have to litigate this case separately from the hundreds of other cases pending in the MDL, they would suffer some extra burden.  This concern, however, does not weigh heavily in the present analysis because the circumstances giving rise to this litigation and the vast number of related cases filed around the country greatly

---

[8] If the case is not transferred, then the stay will be lifted, and this Court will determine the jurisdictional issue, also without significant additional effort on the part of either party.

16

increase the possibility that Defendants may need to litigate some of them separately regardless of this Court's decision.

Thus, the court system's interest in judicial economy, fairness, and consistency is the factor that weighs most heavily in favor of granting a stay in this case. Given the fact that hundreds of similar cases have been transferred already, and the likelihood of many more cases being in a similar procedural posture, the interests of judicial economy and the threat of inconsistent rulings outweighs any potential prejudice to the Commonwealth.[9] *See Rivers*, 980 F.Supp. at 1360 (granting a stay is within the court's discretion and is appropriate when it serves the interests of judicial economy and efficiency); *Torres v. Johnson & Johnson*, 2014 WL 6910478, *3 (D.N.M. Sept. 16, 2014) ("Judicial resources are conserved by staying the action because, if the transfer order is ultimately granted, the Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge."). As other district courts within the Sixth Circuit have recognized, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case." *Kelly v. Aultman Physician Center*, 2013 WL 2358583, *2 (N.D. Ohio May 29, 2013) (quoting *Jackson v. Johnson & Johnson, Inc.,* No. 01–2113, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001)). Where jurisdictional issues "are complex and their resolution is uncertain," and where such issues "are common to other cases already pending before the MDL court . . . and are likely to arise again," they "should be decided by the court overseeing the related cases on a coordinated basis." *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d

---

[9] Although not binding, other district courts in Kentucky also have recognized the importance of coordination and consistency in similar litigation when granting stays pending determinations on transfer to MDL courts before ruling on remand motions. *See, e.g., Bethany H. Bynum v. Volkswagen Group of America*, 3:15-cv-00810 (W.D. Ky. Dec. 4, 2015); *Fox*, 2011 WL 6057509, at *2. The Court also acknowledges Defendants' reference to a host of similar determinations both in related Volkswagen cases and others. [*See* R. 9-1 at 4, 7 (collecting cases).]

976, 981 (S.D. Tex. 2011) (citing *Worldcom,* 244 F.Supp.2d at 905; *In re Penn Cent. Sec. Litig.,* 333 F.Supp. 382, 384 n. 4 (J.P.M.L.1971) ("A stay of proceedings ... may be appropriate ... to avoid inconsistent judicial rulings."); *Manual for Complex Litigation (Fourth)* § 22.35).

### III

While the Court does not definitively hold that federal jurisdiction in this matter is clearly present, it is also not clearly absent, and therefore a stay is appropriate pending a final ruling from the JPML, which is in the best position to determine whether this case ultimately should be transferred.  Accordingly, it is hereby **ORDERED** as follows:

1. The Defendants' Motion to Stay [**R. 9**] is **GRANTED**;

2. All proceedings in this case, including the filing of responsive pleadings or motions, are **STAYED pending the final decision of the JPML** of whether to transfer this case to the Northern District of California for consolidation with other related cases; and

3. In light of the above, the Proposed Agreed Order concerning extending the time for Defendants' responsive pleadings [**R. 13**] is **DENIED AS MOOT**.

This the 25th day of May, 2016.



Gregory F. Van Tatenhove
United States District Judge